THOMPSON, C.J.
Alaqua Lakes Realty, Inc, (“Alaqua Lakes”) appeals an order granting a new trial on damages and liability upon its rejection of an additur. Appellee, Jerry E. Burch, cross-appeals the same order, contending that the court should have ordered the additur without ordering a new trial, or that it should have entered a judgment notwithstanding the verdict. He also contends that the new trial order should have been for a new trial on damages only. We affirm the order.
Burch, an independent contractor and sales representative for Alaqua Lakes, was engaged to sell lots and homes in the subdivision developed by an entity related to Alaqua Lakes. Burch himself bought a lot in the development, but sold it to a couple who signed a “prospect registration card” when they visited the project. They were drawn to the project by a billboard erected by Alaqua Lakes. Through the sale of his lot, Burch tripled his down payment investment.
The contract between Burch and Alaqua Lakes provides that customer lists and prospect registration cards are confidential and that Burch would not use confidential information without permission from Ala-qua Lakes. Alaqua Lakes considered Burch’s action a breach of ethics and of the contract between them. It fired Burch by terminating the contract.[1] Besides terminating the contract, Alaqua Lakes refused to pay Burch commissions to which he claimed entitlement. He claimed he was entitled to commissions (1) for sales that closed before his contract was terminated, and (2) for sales he procured, but which closed after he separated from Alaqua Lakes.
Under the contract with Alaqua Lakes, Burch would be entitled to a percentage of those commissions, or to no commissions at all, depending upon the reason for his termination. First, the contract provided *606 that if Alaqua Lakes terminated the contract upon 30 days notice, Burch would be entitled to 75% of the commissions due him for firm, non-contingent contracts for the sale of lots and/or homes (payable at the time of closing). Second, the contract could be terminated by Alaqua Lakes on five days notice if “the Associate violates the rules and regulations established by the Company from time to time for office procedures and practices.” In that event, Burch would be entitled to 50% of the commissions due him. Third, if Burch terminated the contract (on 30 days notice) he would be entitled to 50% of his commissions. Fourth, paragraph 7(b)(iv) of the contract provided that it could be terminated immediately if Burch were no longer a duly licensed real estate salesperson, or if he “violates any applicable laws, rules or regulations, or engages in conduct that may in any way impact upon the reputation of [Alaqua Lakes]”.[2] Under the latter scenario, Burch would be entitled to no commission “otherwise due Associate on-lot and/or home transactions which were under contract (and did not yet close) prior to termination of this Agreement.” By negative inference, it would appear, Burch would be entitled to 100% of the commissions due him in connection with closings that occurred before termination, without regard to the reason for termination. However, paragraph 4(f) of the contract allows Alaqua Lakes to “withhold and set off from any payments or commissions due the Associate any amounts owed the Company by the Associate pursuant to the terms and provisions of this Agreement.”
After Alaqua Lakes learned that Burch had sold his own lot, Alaqua Lakes sent him a letter of immediate termination “pursuant to paragraph 7(b)(iv)” of the agreement, which provided for immediate termination if the salesperson “violates any applicable laws, rules or regulations, or engages in conduct that may in any way impact upon the reputation of [Aaqua Lakes].” Aaqua Lakes refused to pay Burch his outstanding commissions for sales that.closed after termination, and it refused to pay him $12,983.41 in commissions for sales which closed prior to the termination. Just prior to the termination, Aaqua Lakes had drafted a check payable to Burch in the amount of $12,983.41 and withheld it. Aaqua Lakes contended that it had incurred various costs as a result of Burch’s alleged breach of contract and withheld the $12,983.31 based on paragraph 4(f) of the contract.
Burch sued Aaqua Lakes for breach of contract and fraud, and Aaqua Lakes counterclaimed for breach of contract. It also claimed as an affirmative defense that Burch had breached the contract. On his breach of contract count, Burch claimed to be owed about $300,000, representing commissions for sales he procured. He also sought damages for sales he would have procured over the remaining term of the contract had he not been terminated. Finally, he sought damages for anticipated commissions over the life of the project.
Burch testified that he purchased the lot to build a home and live there, but changed his mind because his commission rate was reduced under the second contract, because more sales associates were added to the force, and because the developer had decided to increase profits by slowing sales and allowing the value of the lots to continue to increase. The couple to whom he sold his lot became his clients because he was “up” when they came in. Burch showed them several lots, but they asked to see “something else,” whereupon he showed them the undeveloped Phase III. Burch then showed them his lot, tell *607 ing them that it might be available. They were interested and he told them he had it under contract. The price was $116,000, or $27,000 more than Burch’s purchase price.
Burch testified that he thought the couple would purchase elsewhere if his lot were not offered to them, and that the purchase would be a win-win situation in that he would not be required to sell some stock in order to close on his purchase, and Alaqua Lakes would have an additional commission. The testimony of the couple generally supported the account given by Burch. They wanted an elevated corner lot that had a stand of trees; Burch’s lot matched that description.
A witness for Alaqua Lakes admitted that if Burch did not breach the contract he would be entitled to damages of $234,000. The jury found that Burch did not breach the contract, but that Alaqua Lakes did breach the contract. The verdict awarded Burch $12,983.41. This is the amount Alaqua Lakes claimed as a set-off. Burch moved for a judgment notwithstanding the verdicts as to damages, for an additur, or for a new trial on damages. The trial court entered an order of additur in the amount of $234,000. In the alternative, the court ordered a new trial on Burch’s claim for $234,000 in commissions and on the affirmative defenses to that claim. The court set forth its reasons:
(a) the jury specifically found that Ala-qua Lakes materially and substantially breached the parties’ Independent Contractor Agreements; (b) the jury specifically found that Burch did not materially and substantially breach the parties’ Independent Contractor Agreements; and (c) Keith C. Bass, on behalf of Alaqua Lakes admitted that a fair calculation of Burch’s real estate commissions, in the event that he did not materially and substantially breach the parties’ Independent Contractor Agreements, is $234,000.
The court did not order a new trial on Burch’s claim for fraud in the inducement or for damages beyond the $234,000. Nor did the court order a new trial on the counterclaim for breach of contract brought by Alaqua Lakes.
The trial court entered an order granting an additur or in the alternative a new trial, pursuant to section 768.74.[3] Section 768.74 provides factors to be taken into consideration in deciding whether to order an additur or remittitur, or in the alternative a new trial. The factors include whether the amount awarded indicates passion or prejudice on the part of the trier of fact, whether it appears the trier of fact ignored the evidence or misconceived the merits of the case regarding the amount recoverable, whether improper elements of damages were taken into ac *608 count, whether the award bears a reasonable relation to the amount of damages proved and the injury suffered, and whether the award is supported by the evidence.
In the instant case, the court entered the additur/new trial order because although the jury found that Burch had not breached the contract, and that Alaqua Lakes did breach the contract, the jury did not award the damages to which Alaqua Lakes admitted Burch would have been entitled if he had not breached the contract. In other words, the damages were inadequate in that the amount awarded did not approach the $234,000 Alaqua Lakes admitted Burch earned for sales he had procured. Because Alaqua Lakes rejected the additur, the issue on appeal is the order for new trial. See Poole v. Veterans Auto Sales and Leasing Co., Inc., 668 So.2d 189 (Fla.1996).
In Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999), a case involving an order for new trial but not involving additur or remittitur, the supreme court stated:
To summarize, this Court has repeatedly held that the trial judge has broad discretion in ruling on a motion for a new trial on the grounds that the verdict is contrary to the manifest weight of the evidence. A trial judge has the responsibility to draw “on his [or her] talents, his [or her] knowledge, and his [or her] experience to keep the search for the truth in a proper channel,” and the trial judge should always grant a motion for a new trial when “the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record.” Cloud [v. Fallis, 110 So.2d 669, 673 (Fla. 1959) ]. The trial judge’s discretion permits the grant of a new trial although it is not “clear, obvious, and indisputable that the jury was wrong.” When a trial judge grants the motion for a new trial, he or she must articulate the reasons for the new trial in the order.
The supreme court applied Brown to a case in which the trial court granted a motion for additur or in the alternative new trial. Trujillo v. Uniroyal Tire Co., 753 So.2d 1256 (Fla.2000).
In reviewing a post trial order, the Brown court stated, appellate courts must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion. Id. at 497-98. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion. Id. The fact that there may be substantial, competent evidence in the record to support the jury verdict does not necessarily demonstrate that the trial judge abused his or her discretion. Id.
In the instant case, Alaqua Lakes argues that the jury awarded Burch only $12,983.41 because, although the jury recognized that Burch’s termination had been proper, it did not agree that Alaqua Lakes was entitled to retain the $12,983.41 as a set-off. Alaqua Lakes states that the verdict was fully supported by the evidence and was, and could be, adduced in a logical manner by reasonable persons. This argument is without merit because Brown specifically rejected the notion that a trial court abuses its discretion in ordering a new trial solely because there is substantial, competent evidence in the record to support the verdict.
Further, the trial court did not merely disagree with the verdict. The contract between Burch and Alaqua Lakes provides that he is entitled to a percentage of the commissions for sales he procured but which closed after termination. Ala- *609 qua Lakes asserted as an affirmative defense that it was not required to pay him those commissions because he materially breached the contract by self-dealing and using a registered prospect. The jury seemingly rejected the affirmative defense by its verdict that Burch did not breach the contract, but it did not award him the commissions to which Alaqua Lakes admitted he would have been entitled absent a breach of contract on his part. Given the verdict that Burch did not breach the contract, the damage award is inadequate. Compare, Arena Parking, Inc. v. Lon Worth Crow Ins. Agency, 768 So.2d 1107 (Fla. 3d DCA 2000) (jury verdict clearly inadequate and trial court erred in denying motion for additur, where jury found plaintiff 57% negligent, but only awarded plaintiff 16% of amount of damages shown by plaintiffs exhibits).
Finally, Alaqua Lakes argues that the court failed to address the factors enumerated in subsection 768.74(5). Alaqua Lakes addresses these factors, and argues that the “record is void of any scintilla of evidence that the jury was acting under prejudice, passion or corruption, ignored the evidence in reaching its verdict, misconceived the merits of the case relating to the amount of damages recoverable or that they arrived at the amount of damages by speculation or conjecture.” We disagree. The verdict, which finds that Burch did not breach the contract, but which awards him less than the amount Alaqua Lakes conceded would be owed in the absence of a breach on his part, shows that the jury misconceived the merits of the case relating to the amount of damages. In the alternative, the jury misconceived some other aspect of the case. Finally, we think the trial court adequately set forth its reasons for entering the order.
Burch contends in his answer brief and by way of cross appeal, that the court should have awarded the additur, but should not have allowed the option of a new trial because Alaqua Lakes Realty conceded damages of $234,000. In the alternative, he argues that the court should have entered a judgment notwithstanding the verdict, or that there should be a new trial on damages only. He contends that since the jury decided that he did not breach the contract, Alaqua Lakes Realty had no right to retain his hard-earned commissions as a matter of law. We disagree. The verdict was defective for some reason, but it is as likely that the jury misunderstood some other concept as it is likely the jury misunderstood the damages issue, so it would be unfair to allow a re-trial on damages only. Cf. Food Lion v. Jackson, 712 So.2d 800 (Fla. 5th DCA 1998); ITT Hartford Ins. Co. of the Southeast v. Owens, 760 So.2d 210, 212 (Fla. 3d DCA 2000) (intent of section 768.043 is that where the problem leading to the excessiveness or inadequacy is one which affected damages only, then there should be a new trial on damages, but not liability), rev. granted, 5C00-1508, 789 So.2d 346 (Fla.2001); Rule 1.530(a), Fla. R. Civ. P.
The order on review is AFFIRMED.
PLEUS and PALMER, JJ., concur.

. Burch actually operated under two one-year contracts, the second of which was terminated by Alaqua Lakes about halfway through its term. The wording of the two contracts differs slightly, but this seems to be of no moment with regard to the issues in this appeal.

. Burch's first contract omitted the words "or engages in conduct.”

. Section 768.74 provides in part:
(1) In any action to which this part applies wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount -is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.
(2) If the court finds that the amount awarded is excessive or inadequate, it shall order a remittitur or additur, as the case may be.
(4) If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of damages only, (emphasis supplied)
Section 768.74 is located in part II of chapter 768 and applies to "any action for damages, whether in tort or contract." § 768.71(1), Fla. Stat.